**NOT RECOMMENDED FOR PUBLICATION**
File Name: 10a0144n.06

No. 09-5673

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RUTH A. BROCK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL | ) | EASTERN DISTRICT OF KENTUCKY |
| SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**FILED**
**Mar 08, 2010**
LEONARD GREEN, Clerk

BEFORE:     MERRITT, COOK, and KETHLEDGE, Circuit Judges.

   **MERRITT, Circuit Judge.**   Ruth Brock appeals from the District Court's decision to uphold the Commissioner of Social Security's denial of her application for disability insurance and supplemental security income benefits.  Brock claims that the administrative law judge reviewing her application failed to properly weigh her treating physician's opinion and failed to adequately represent her mental limitations to the vocational expert.  After reviewing the record, we find that the administrative law judge gave proper weight to the treating physician's opinion and that his denial of benefits was based on substantial evidence.  We, therefore, AFFIRM the decision of the District Court.

**I. Factual and Procedural History**

On February 20, 2004, Brock protectively filed an application for disability insurance benefits, and on December 5, 2003, she protectively filed an application for Supplemental Security Income. She alleges a disability beginning in October 2003, due to a combination of ailments including hypertension, coronary artery disease, hypothyroidism, fibromyalgia, degenerative disc disease, chronic lower back pain, morbid obesity, anxiety and depression.

Brock's applications were denied initially and again upon reconsideration. At Brock's request, an administrative law hearing was held on August 25, 2006. During the hearing, the administrative law judge heard testimony from Brock and vocational expert Anne Thomas. The judge made findings pursuant to the governing five-step sequential analysis. *See* 20 C.F.R. § 416.920. At step one, he found that Brock had not engaged in substantial gainful employment since the alleged onset date of disability. At steps two and three, the administrative law judge found Brock's medically determinable impairments were severe, but determined that none of them met the listing found in Appendix 1 of the regulations. At step four, the judge determined that while Brock could perform a limited range of light work, she would be unable to perform past relevant work. Finally, at step five, he found that there were significant jobs in the economy that Brock could perform. Consequently, the administrative law judge found that she was not disabled and not entitled to disability insurance benefits. The Appeals Council declined to review the decision, and Brock sought judicial review. The District Court below affirmed the decision, and Brock timely appeals.

## II. Analysis

Brock raises three arguments on appeal: (1) the administrative law judge did not properly weigh the opinion of her treating physician, Dr. Charles Moore; (2) the administrative law judge did not provide an adequate rationale for rejecting the opinion of Dr. Moore; and (3) the hypothetical question that the administrative law judge posed to the vocational expert should have included mental limitations assessed by consultative examiners Drs. Pamela Starkley and Kevin Eggerman. Because the first two arguments have significant overlap, we will address them together.

This Court's review is limited to determining whether the Commissioner's decision was supported by substantial evidence and was made according to proper legal standards. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

### A. Treatment of Dr. Moore's Opinion

Brock argues that the administrative law judge failed to give the opinion of her treating physician the proper weight and failed to provide an adequate justification for rejecting Dr. Moore's opinion. The controlling regulations instruct the administrative law judge to give the treating physician's opinion substantial weight if: (1) it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(d)(2). The regulations also provide that the administrative law judge will give "good reasons" for the weight given to a treating physician's opinion. *Id.*; *see also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). Further, if the opinion of a treating physician is not given controlling weight, the administrative law judge must consider specific factors in determining what weight the treating physician's opinion should be given. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004). Those factors include: "the length,

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; [and] the specialization of the physician." *Rogers*, 486 F.3d at 240.

In *Wilson*, this Court found error when an administrative law judge did not give good reasons for failing to give weight to a treating physician's opinion. 378 F.3d at 544-46. This Court noted that the purpose for giving "good reasons" is so a claimant can understand the outcome of her case. *Id*. at 544. This is especially important when a claimant knows that her physician classified her as disabled and, therefore, "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Id*.

It is uncontested that Dr. Moore was Brock's treating physician. In June 2006, in addition to his previous diagnoses listed above, Dr. Moore opined that Brock could only continuously sit, stand, or walk for one hour each during an eight-hour work day and that she could only occasionally lift or carry up to five pounds. Administrative Record ("AR") at 439. When addressing the opinions and diagnoses of Dr. Moore, the administrative law judge found the following:

> As for the opinion evidence, the undersigned is fully cognizant of the usual deference afforded treating medical source opinions. However, Dr. Moore's opinion that the claimant is "100% disabled" is unsupported by his essentially benign clinical data. Moreover, the determination of disability is an issue ultimately determined by the Commissioner of Social Security. Additionally, Dr. Moore cited diagnoses of "Degenerative disc disease, including the knees, ankles and wrist" and fibromyalgia, all without benefit of diagnostic or radiological studies. The undersigned also notes Dr. Monderewicz's statement that the claimant "appeared to have tender points consistent with the diagnosis [fibromyalgia]." However, he did not recommend further investigative measures. Regardless, the undersigned has carefully considered the doctor's overall opinion in the determination of the claimant's residual functional capacity.

AR at 25. (internal citations omitted).

Here, the administrative law judge's decision to reject the opinion of Dr. Moore was supported by substantial evidence in the record and provided "good reasons" to inform Brock of why Dr. Moore's opinion was not being credited. As an initial matter, he correctly disregarded Dr. Moore's statement that Brock was "100% disabled," as the regulations reserve this determination for the Social Security Secretary. 20 C.F.R. § 404.1527(e)(1). Subsection (e)(3) further states that no "special significance" will be given to opinions of disability, even those made by the treating physician. 20 C.F.R § 404.1527(e)(3).

Additionally, the administrative law judge's findings challenge the supportability and consistency of Dr. Moore's diagnoses with the other evidence in the record in an indirect but clear way, as was the case in *Nelson v. Commissioner of Social Security*, 195 F. App'x 462 (6th Cir. 2006) (when administrative law judge attacks the supportability and consistency of treating physician's opinion describing its faults, then treating physician's opinion may not be consistent with the record as a whole and, therefore, not entitled to controlling weight). The administrative law judge noted that Dr. Moore's findings did not have the support of clinical data. AR at 25. Dr. Moore's diagnoses for degenerative disc disease or fibromyalgia were not confirmed by diagnostic or radiological studies. *Id.* Additionally, the judge considered evaluations by other examining doctors. He noted that cardiologist Dr. Michelle Friday found in October of 2003 that Brock had normal arteries with only minimal plaquing and normal left ventricular function. AR at 18. The judge found that in May 2004, Dr. Jules Barefoot performed a consultive exam finding "no significant motor, sensory, or reflex deficits and no evidence of any disorder." *Id.* He further addressed a consultive evaluation performed in October of 2005 by Dr. Monderewicz. Dr. Monderewicz stated that Brock had tender

points consistent with Dr. Moore's diagnosis of fibromyalgia but did not recommend any further testing. AR at 19, 25. The judge also found that Brock's pain appeared to be adequately controlled by the medication prescribed by Dr. Moore. AR at 24. All of the preceding factual findings are supported by the record evidence. Finally, the administrative law judge also considered Brock's demeanor and testimony during the hearing when evaluating her claims of disability. *See Ashworth v. Sullivan*, 951 F.2d 348 (6th Cir. 1991) (table) (noting that claimant's demeanor at the hearing belied her doctor's conclusions of disability). He found that she did not exhibit the behavior of an individual in "prolonged or severe pain or any other debilitating symptomatology." AR at 24.

In sum, the administrative law judge addressed in-depth the findings of Dr. Moore's examinations, including evaluations in February 2005 and June 2006. AR at 18-19. He explicitly stated that he was aware of the usual deference given to a treating physician's opinion and that he considered Dr. Moore's overall findings when determining Brock's residual functioning capacity. AR at 25. However, as noted above, he did not believe Dr. Moore's findings were supported by clinical data. *Id*. Because there is substantial evidence in the record to support the administrative law judge's determination, we find that he afforded the proper weight to the opinion of Dr. Moore and that he provided good reasons for the weight he was affording.

### C. Hypothetical Question Posed to Vocational Expert

Brock contends that the hypothetical question posed to the vocational expert did not accurately describe her mental limitations. In order for the Commissioner to rely upon the vocational expert's testimony to meet his burden, "the testimony must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects; for a response to

a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Consequently, we must determine whether the information contained in the hypothetical question was accurate.

The record reflects that two consultative mental evaluations were performed on Brock, one in May 2004 and another in October 2005, by Psychologist Starkley and Dr. Eggerman, respectively. In May 2004, Starkley determined that Brock was likely to have mild difficulty with simple instructions, moderate difficultly with skills needed for completing tasks in work settings and household routines, and moderate difficulty with the normal pressures of a work setting. AR at 186. Further, Starkley concluded that Brock's ability to relate to people was mildly impaired. *Id*. When Dr. Eggerman evaluated Brock in October 2005, his conclusions were not as restrictive as those determined by Dr. Starkley more than a year before. For instance, Eggerman found that Brock was not limited in her ability to remember simple instructions. AR at 331-32. He also determined that she was only mildly limited in her ability to complete detailed instructions, make simple work-related judgments, and interact appropriately with co-workers and supervisors. *Id*. Finally, somewhat similarly to Dr. Starkley, he determined that she would have mild to moderate difficultly responding to work related pressures. *Id*. at 332.

Using these consultations, the administrative law judge made the following finding regarding Brock's mental capabilities:

> [T]he undersigned agrees with the opinions of Psychologist Starkley and Dr. Eggerman, who found the claimant retains the capacity to understand, remember and carry out at least short, simple instructions. Moreover, after the more recent

> evaluation by Dr. Eggerman, it was determined the claimant retained adequate capacity to understand, remember, and carry out even detailed instructions; interact appropriately with the public, supervisors, and coworkers; and respond appropriately to changes in a routine work setting.

AR at 25. The administrative law judge asked the vocational expert to assume that Brock could "engage in occasional and superficial contact with coworkers, supervisors and the general public." AR at 519. Brock claims that because the question failed to include her ability to tolerate work pressures, maintain attention, maintain attendance and other various restrictions, then the vocational expert's testimony is unreliable.

Contrary to Brock's suggestion, the administrative law judge agreed with the findings of both mental health professionals. But the findings reflect that he focused more on the recent assessment completed by Dr. Eggerman, who found that Brock's mental limitations were less restrictive than those found by Dr. Starkley. The administrative law judge's question accurately reflected the findings of Dr. Eggerman, as Dr. Eggerman believed that Brock was only mildly limited in all assessments with the exception of responding to work related pressures. Further, a hypothetical question may be incomplete, yet still accurately portray a claimant's limitations. *See*, *e.g.*, *Infantadao v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008). Such is the case here. While the hypothetical question could have contained more restrictions, it contained an accurate portrayal of Brock's mental limitations.

Consequently, the vocational expert's opinion constitutes substantial evidence. The vocational expert identified jobs that Brock could complete given her mental limitations, and the administrative law judge appropriately relied on this opinion. The Commissioner met his burden

of proving the existence of alternative work for Brock, and the District Court's opinion is

AFFIRMED.